*Formatted for Electronic Distribution*                                          *Not For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

**In re:**

    **Dorothy DuCharme, a/k/a**                                      **Chapter 7 Case**
    **Dorothy Ducharme,**                                            **# 06-10154**
        **Debtor.**

_____

**In re:**

    **Tammy J. Cusson**                    Filed & Entered          **Chapter 7 Case**
        **Debtor.**                      On Docket              **# 06-10195**
                                         July 21, 2008

_____

*Appearances:  John C. Gravel, Esq.*                              *Michael Carver, Esq.*
             *Bauer, Gravel, Farnham,*                        *Greene, Seaver &*
              *Nuovo, Parker & Lang*                          *Carver, P.C.*
             *Burlington, VT*                                 *Burlington, VT*
             *Attorney for the Debtors*                       *Attorney for the Creditor*

## MEMORANDUM OF DECISION
### GRANTING DEBTORS' MOTION TO AVOID LIEN OF JAMES A. NAYLOR D/B/A NAYLOR CONSTRUCTION

      The dispute presented in this contested matter is whether James A. Naylor d/b/a Naylor Construction ("Naylor") has a valid contractor's lien[1] against homestead property jointly owned by Dorothy DuCharme and Tammy Cusson (the "Debtors")[2] and, if so, whether the Debtors may avoid that lien through their bankruptcy cases. There is no dispute as to the material facts underlying the creation of the contract between the parties or Naylor's efforts to obtain a judgment against the Debtors based upon the Debtors' breach of contract. The legal issues presented by the Debtors' "Motion to Determine Secured Status of Lien. . . Pursuant to 11 U.S.C. § 506(d), Or in the Alternative, To Avoid Lien in Part Pursuant to 11 U.S.C. § 522(f)(1)(A)" (the "Motion") are: (1) whether Naylor may enforce his state court judgment as a contractor's lien, notwithstanding his failure to record it within five months; and (2) whether the Debtors may avoid Naylor's judgment as a judicial lien that impairs the Debtors' homestead exemption. For the reasons articulated below, the Court finds, first, that Naylor's failure to record his judgment in the manner prescribed by the Vermont Contractor's Lien Statute is fatal and therefore no part of his judgment may be enforced as a contractor's lien; and second, that the judgment is a judicial lien that impairs the Debtors' homestead exemption, and therefore may be avoided under § 522(f)[3] of the Bankruptcy Code.

### BACKGROUND FACTS & PROCEDURAL HISTORY

      The parties have each filed a statement of the facts they allege to be undisputed and material to the instant dispute (doc. ## 31, 38).[4] Their statements are substantially similar with regard to all of the material facts.[5] The Court has therefore distilled the two statements to the following recitation of material facts:

1.      On April 1, 2004, the Debtors, as the joint owners of a residence located at 21 Clifford Street in

Winooski, Vermont, (the "Property"), entered into a contract with Naylor to perform certain repairs to the Property.

2.  Thereafter, a dispute arose between the parties and the Debtors did not pay Naylor pursuant to the contract.

3.  On September 28, 2004, Naylor filed a Notice of Contractor's Lien dated September 27, 2004. He recorded the lien in the Winooski land records at volume 158, page 173.

4.  Naylor filed suit in Chittenden Superior Court (Docket No. 142-05CnC) for breach of contract, to perfect his contractor's lien against the Property, and to obtain damages under Vermont's "Prompt Payment Act."

5.  On March 25, 2005, Naylor obtained a Writ of Attachment and Order of Approval of Writ of Attachment in the amount of $20,000; Naylor timely recorded the Writ in the Winooski land records at volume 162, pages 210-213, pursuant to 9 V.S.A. § 1921 et seq.

6.  On April 22, 2005, the Debtors granted a mortgage on the Property, in the amount of $184,800, to Aegis Lending Corporation ("Aegis"); Aegis recorded the mortgage in the Winooski land records at volume 163, pages 341-355. The current balance due on this mortgage is approximately $182,000.

7.  There is a prior mortgage against the Property, dated June 12, 1997, in the amount of $6,000, in favor of the Vermont Housing and Conservation Board ("VHCB"); it is recorded in the Winooski land records at volume 111, page 37.

8.  On February 22, 2006, Naylor obtained a Judgment Order (the "Judgment") against the Debtors in the Chittenden Superior Court action (described in ¶ 4, above); the Judgment awarded Naylor $42,594 plus interest and penalties, and specified the components of the award as follows:

    > WHEREFORE, the court awards Judgment for [Naylor] against the [Debtors] in the amount of $42,594.02 plus interest and penalties as provided by law. This Judgment includes the $25,000 due under the contract plus the $2210.10 in consequential damages that [Naylor] suffered because of the [Debtors'] wrongfully withheld payment on the construction contract. In addition, the court finds that [Naylor] is entitled to collect from the [Debtors] statutory interest at the rate of 12% per year from August 21, 2004 through the date of this judgment on the $25,000 under the contract. [Naylor] is also awarded statutory penalties at the rate of 1% per month for the $25,000 due under the contract from August 21, 2004 through the date of his judgment. As the prevailing party in the litigation, [Naylor] is awarded his attorney's fees and costs. Accordingly an amount equal to the fees and costs ($15, 373.92) has been included in this judgment.

9.  As of the date Naylor filed his Motion, the Judgment Order had not been recorded in the Winooski land records.

10. On March 23, 2006, the Debtors filed a Notice of Appeal from the Superior Court Judgment Order.

11. On April 10, 2006, the Debtors each filed a chapter 7 bankruptcy petition (doc. # 1).

12. In their bankruptcy petitions, the Debtors claimed the Property was valued at $210,000, of which $10,000 was exempt under 27 V.S.A. § 101. No timely objection was made to this exemption.

13. On May 11, 2006, the Debtors filed a motion to avoid the Naylor lien (doc. # 7); on May 16, 2006, Naylor filed an objection to that motion (doc. # 10); on June 1, 2006, the Debtors withdrew the motion (doc. # 14).

14. On May 16, 2006, Naylor filed a motion for relief from stay to enforce his lien (doc. # 11); on June 1,

2006, the Debtors opposed the motion (doc. # 14); on June 13, 2006, the Court granted Naylor relief from stay (doc. # 16).

15.    On August 7, 2006, the Debtors were each granted a discharge and the cases were closed shortly thereafter (doc. # 19).

16.    On September 18, 2007, the Vermont Supreme Court issued a decision affirming the Superior Court Judgment. Naylor v. Cusson & Ducharme, 940 A.2d 717, 2007 VT 108 (Vt. 2007).

17.    On September 28, 2007, Naylor filed a motion in Chittenden Superior Court, pursuant to the Prompt Payment Act, requesting that the court issue a Final Judgment Order that included an award of all post-judgment attorney's fees totaling $38,202.50.

18.    On November 29, 2007, the Debtors filed motions to reopen their respective chapter 7 cases (doc. # 23), accompanied by motions to avoid Naylor's lien (doc. # 24). Naylor objected to both motions (doc. ## 25, 26).

19.    On January 15, 2008, the Court heard argument on the motions. The Court granted the motions to reopen the cases; an Order to that effect was entered on January 18, 2008 (doc. # 27). The Court reserved decision on the motions to avoid lien, and ordered the parties to submit statements of material fact.[6]

21.    The parties supplemented the record by filing a copy of the Vermont Supreme Court decision and the briefs filed in connection with the appeal of the Superior Court judgment order (doc. # 61).

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## ISSUES PRESENTED

The Debtors' Motion (doc. # 24) presents two issues. The first issue is whether Naylor has a valid contractor's lien. The second issue is whether that lien is vulnerable to avoidance in bankruptcy. If Naylor has a valid contractor's lien, then, to the extent the state court judgment enforces that contractor's lien, it is a statutory lien and not subject to avoidance in bankruptcy. If, by contrast, Naylor does not have a valid contractor's lien, then the state court judgment is a judicial lien that may be avoided, under § 522(f)(1) of the Bankruptcy Code, to the extent it impairs the Debtors' homestead exemption.

## DISCUSSION

**I.    Statutory Background for Ascertaining Validity of Contractor's Lien**

Property interests are created and defined by state law. Butner v. United States, 440 U.S. 48, 55 (1979). In that regard, federal courts have long held that the validity and construction of liens are questions of state law. See Peck v. Jenness, 48 U.S. 612, 615 (1849); In re Continental Vending Mach. Corp., 543 F.2d 986, 992 (2d Cir. 1976). Accordingly, the Court will look to Vermont law to determine the validity of Naylor's alleged contractor's lien.

The Second Circuit Bankruptcy Appellate Panel, in Official Unsecured Creditors' Comm. of the

3

Rainbow Trust v. Moulton Constr., Inc. (In re the Rainbow Trust), 216 B.R. 77 (2d Cir. BAP 1997), summarized the Vermont contractor's lien statute's requirements for perfection and enforcement:

> Under Vermont's contractor's lien statute, 9 V.S.A. § 1921 et seq.,[7] a contract that is made to improve real property, furnish labor, or provide materials creates a contractor's lien upon the property. 9 V.S.A. § 1921(a). A contractor is required to record a notice of memorandum of lien in the town clerk's office which "shall charge such real estate with such lien as of the visible commencement of work or delivery of material...." See 9 V.S.A. §§ 1921(c), 1923.[8] Within three months of filing the notice, the contractor is then required to commence an action to enforce the contractor's lien. 9 V.S.A. § 1924.[9] Within that three month period, the lienholder must also secure an attachment on the real property that is the subject of the lien under Rule 4.1 V.R.Civ.P.,[10] in order to perfect the contractor's lien. Id. See also In re APC Construction, Inc., supra, 132 B.R. 690, 694 (citations and internal quotations omitted) ("Obtaining a judicial order for a writ of attachment within the three month period prescribed under § 1924 perfects the lien and is a requisite to preserving the statutory lien .... The failure to perfect a recorded notice of lien by obtaining a writ of attachment means the lien is lost"). "[T]he property involved must be actually attached within the three-month period, and ... it is not enough that the suit be merely commenced." Filter Equipment Co., Inc. v. International Business Machines Corp., 142 Vt. 499, 502, 458 A.2d 1091 (1983) (citations omitted). Any judgment obtained must contain a brief statement relating to the contract. 9 V.S.A. § 1924. Within five months of the date of the judgment, the plaintiff must record a certified copy of the judgment with the town clerk's office. See 9 V.S.A. § 1925.[11] The effect of that recordation is to encumber the real estate "... for the amount due upon such judgment ... from the time of the visible commencement of work or delivery of materials ...." See 9 V.S.A. § 1925. Furthermore, "the resulting judgment, when obtained, has the force of a mortgage, and a right of foreclosure for nonpayment." Filter Equipment Co., Inc. v. International Business Machines Corporation, supra, 142 Vt. at 502, 458 A.2d 1091.

Id. at 83.

A party seeking enforcement of a contractor's lien must be scrupulous in adhering to the procedures set forth in the statute. See Goodro v. Tarkey, 112 Vt. 212, 214, 22 A.2d 509 (1941) ("[T]he right to acquire and enforce mechanic's liens is a creature of and dependent upon statutes."). An early Vermont Supreme Court decision, Piper v. Hoyt, 61 Vt. 539, 17 A. 798 (1889), observed:

> The mechanic's lien enactment provides a special remedy in favor of a particular person or class of persons. One of the steps is taking out a writ, but that in itself is not special. It could have been done as well without this statute, in common with other creditors. The object of the statute is security, and the effect is a preference. The favored creditor should therefore be held to a reasonably strict compliance. In this case the attachment was more than three months after the lien was filed. If, therefore, the debt was due when the lien was filed, the attachment was too late to preserve the lien.

Id. at 539. Almost a century later, this Court echoed the importance of complying with the contractor's lien statutory prerequisites:

> Vermont's statutory contractor's lien exists the moment a contractor commences "visible" work or supplies materials to real property. It is inchoate until further steps are

4

taken toward perfection, but nevertheless, it exists, and an intervening bankruptcy cannot change it. But it may be lost by failure of perfection.

Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re: APC Const., Inc.), 112 B.R 89, 125 (Bankr. D.Vt. 1990).

## II.      Validity of Naylor's Contractor's Lien

There is no dispute that Naylor followed all of the steps required by the state statute to create and perfect his contractor's lien. He: (i) provided materials and improvements pursuant to a contract that gave rise to a contractor's lien under 9 V.S.A. § 1921; (ii) perfected that contractor's lien by filing a notice of contractor's lien in the Winooski land records that satisfied the criteria established by 9 V.S.A. §§ 1921 and 1923; and (iii) timely moved to enforce the contractor's lien by filing suit in Chittenden Superior Court, and obtained a writ of attachment within 180 days of filing the notice of lien, as mandated by 9 V.S.A. § 1924. The Court finds that Naylor obtained and perfected a contractor's lien against the Debtors' property, in full compliance with article 9 of the Vermont statutes.

The thrust of the Debtors' Motion is that Naylor's contractor's lien expired before he could foreclose it. They are correct. Naylor admits that he did not record a certified copy of the February 22, 2006 Chittenden Superior Court Judgment within five months of obtaining that Judgment. It is this Court's determination that, as a result of Naylor's failure to comply with the statutory recording deadline, the state court judgment does not have "the force of a mortgage, and a right of foreclosure for nonpayment" as it would have had if Naylor had complied with the statutory requirements. See Filter Equip. Co., 142 Vt. at 502, 458 A.2d at 1092 (citing 9 V.S.A. § 1925). This determination is consistent with holdings in cases where a party did not comply with other provisions of the contractor's lien statute. See Wardwell v. Metilly, 253 B.R. 512, 513 (D.Vt. 2000) (holding that if contractor did not comply with § 1924 in filing action to perfect lien within three months from filing lien in town clerk's office, the lien is lost – "no statutory lien existed"); Filter Equip. Co., 142 Vt. at 502 (failure to file an action to perfect lien within three months from filing lien results in lapse of lien for failure to perfect); Piper, 61 Vt. at 540 (failure to perfect recorded notice of lien by obtaining writ of attachment bars the in rem action and the lien is lost). See also Obuchowski v. Entis (In re Robert), 2007 WL 2406926 at * 4-5 (Bankr. D.Vt. Aug. 17, 2007) (creditor's failure to obtain state court judgment, and his release of his contractor's lien, rendered writ of attachment a nullity).

In his opposition papers,[12] Naylor acknowledges that he did not file a copy of his judgment in the land records within five months of the judgment date,[13] but claims there is an "excellent reason" why he has not yet done so: "due to debtor's appeal to the Vermont Supreme Court, he has not yet been issued a final judgment" (doc. # 25) (emphasis in original). Naylor's position is that his failure to record the Superior Court Judgment he obtained against the Debtors within five months of obtaining it is not fatal because he was not required to record the judgment until five months after it became final, and since the state court case was on

appeal, the Judgment had not yet become final. Id. at p. 9. In this regard, Naylor claims that he "has yet to be issued a certified copy of his judgment, certified by the Clerk of the Chittenden Superior Court that the same has become final, all as required by the provisions of 12 V.S.A. § 2904,"[14] most likely because "the remand order of the Vermont Supreme Court provided that the trial court consider Naylor's request for an award of all post-judgment attorney's fees provided for in [the Prompt Payment Act]." Id. He adds that following remand to the Superior Court from the Supreme Court, he had asked that a final, certified judgment be issued; that request was denied; he filed a motion in the Supreme Court asking that the Superior Court be directed to issue such an order, and that request was also denied. Id. Naylor asserts that, as a result, he does not yet have a certified final judgment, which he views as a "condition precedent" to recording the Superior Court Judgment in the land records. Id.

Naylor also argues that 12 V.S.A. § 2901, found in the chapter of the Vermont Statutes devoted to Judgment Liens, provides that a "final judgment" issued in a civil action "shall constitute a lien on any real property of a judgment debtor," and specifies the requirements for recording such a final judgment – i.e., that the judgment must be final, certified by the clerk of the court, and then recorded. Against that statutory background, Naylor frames his argument that the "judgment" referred to in 9 V.S.A. § 1925, that must be recorded "within five months after the date of such [state court] judgment. . ." is the same "final judgment" in § 2904. He posits:

> There is no known case involving the foreclosure of a judgment that has not become final nor could there be since such an attempt would give rise to a slander of title action by the defendant therein. Since this section of the statute [9 V.S.A. § 1925] refers to a foreclosure of the judgment and since the foreclosure of a judgment cannot take place before it becomes final, of necessity the legislature was referring to the foreclosure of final judgments and the recording requirements therein pertain to final judgment, not inchoate ones.

(Doc. #25, p. 13).

The Court declines to read a finality requirement from a different title of Vermont law into the Contractor's Lien Statute. In In re Ahokas, 361 B.R. 54 (Bankr. D.Vt. 2007), the Debtor asserted that a recorded judgment was defective because it was not marked "final." There, this Court quoted the appellate decision issued in Rainbow Trust, which, when applied here, disposes of Naylor's finality argument:

> Pursuant to § 1925, [the Creditor] also properly recorded the Judgment within the five month statutory period. As noted by the bankruptcy court, the Judgment was not required to be either final or contain a notation as to the date of its finality.

Ahokas, 361 B.R. at 65 n.9 (quoting Rainbow Trust, 216 B.R. at 83 n.5). Even if there were no such case law, one of the principal axioms of statutory construction is that "absent clear evidence of a contrary legislative intent, a statute should be interpreted according to its plain language." U.S. v. Apfelbaum, 445 U.S. 115, 121 (1980). We are aware of no legislative intent, and Naylor cites none, that would require 12 V.S.A.§ 2904's

finality requirement to be read into 9 V.S.A.§ 1925. If the Vermont Legislature had intended to have § 2904 apply to a contractor's lien, it could easily have referred to that recording requirement in Article 9 that delineates the procedure for obtaining, perfecting, and enforcing a contractor's lien. Or, it could have included the word "final" before the word "judgment" in § 1925. It did neither: it merely refers back to "such judgment" obtained as a result of filing an action to enforce lien in § 1924. To stretch the plain language of § 1925 to read in the qualifier "final" before the word "judgment" would violate the plain language rule of statutory interpretation. See Weale v. Lund, 180 Vt. 551, 552, 904 A.2d 1191, 1193-94 (2006) ("In general, [the court] will not read something into a statute that is not there unless it is necessary to make the statute effective."). In addition, Naylor's reading would defeat the strict and expeditious time requirements in the Contractor's Lien Statute as it would allow a party to rely on the eight year time frame for recording a final judgment provided in 12 V.S.A. § 2904, when seeking to enforce a contractor's lien pursuant to 9 V.S.A. § 1925.

Naylor's slander of title argument – if he had recorded the judgment before it was final, he would have been liable for slander of title – is equally unconvincing. The essence of that tort

> is the publication of an assertion that is derogatory to the plaintiff's title to property in an effort to prevent others from dealing with the plaintiff. To prove slander of title, a plaintiff must prove that a defendant falsely published a statement concerning plaintiff's title that caused special damages to the plaintiff and that defendant acted with malice.

Wharton v. Tri-State Drilling & Boring, 175 Vt. 494, 497, 824 A.2d 531, 536-37 (2003). Naylor's speculation is unfounded, as he does not assert that he would have been acting with malice if he recorded the Judgment "prematurely," or that the Debtors would suffer special damages from his recording of the Judgment.

To recapitulate: Vermont's Contractor's Lien Statute appears intended to balance the right of the contractor to an in rem lien to secure its payment against the due process rights of all other parties who have or might acquire an interest in the subject property. The contractor must provide notice of its claim and meticulously follow a process to create, perfect, and enforce the lien. The first step in the process is creating a lien by filing a notice of lien pursuant to 9 V.S.A. § 1921(a) and (c). Naylor complied with the statute: he filed a notice of lien, including the required memorandum describing the basis of his claim, on September 28, 2004. This put the world on notice of his claim against the Property, as required by 9 V.S.A. § 1923. The second step in the process is that the contractor must, within 180 days of filing the notice of lien, commence an action in state court to enforce the lien, pursuant to 9 V.S.A. § 1924. This action is "not an ordinary action of a creditor against a debtor, but a special action which the law makes a necessary step in the enforcement of the [contractor's] lien." Goodro, 112 Vt. at 216. Naylor satisfied this requirement by timely commencing a lawsuit in Chittenden Superior Court, during the course of which he obtained a Writ of Attachment and Order of Approval of Writ of Attachment in March 2005. Naylor timely recorded the Writ in the Winooski land

records. He also obtained a judgment from the Superior Court in February 2006. This put the world on notice (including all parties with an interest in the Property) of a judicial determination of the amount of his alleged lien. The final step of the process is that the contractor must record a certified copy of the judgment, in the office of the clerk of the town where the property is located, within five months after obtaining the judgment. This step transforms a claim under the contractor's lien law from what would otherwise have been a "regular" judgment, effective as of the date it is recorded, into a lien that is given effect as if it had been obtained on the date of visible commencement of the work on the property. See 9 V.S.A. § 1925. Naylor failed to comply with this final step. As a result, the contractor's lien that he had worked so hard to earn and create, expired, leaving him with a garden variety breach of contract judgment.

The Court concludes that the Contractor's Lien Statute requires that the contractor record the judgment within five months of obtaining it, without regard to whether it is final; and Naylor's contractor's lien expired once five months had passed after the Chittenden Superior Court issued its Judgment and Naylor failed to record it, pursuant to § 1925. Therefore, Naylor's contractor's lien on the Debtors' Property expired prior to the Debtors' bankruptcy filing.

**III.    The Nature of Naylor's Judgment and Its Vulnerability to Avoidance under Bankruptcy Law**

The Court must now address how the expiration of the lien affects the Chittenden Superior Court Judgment in order to determine the nature and validity of that Judgment in the context of a bankruptcy case.

The Judgment recited that Naylor was entitled to $42,594.02 in damages based upon breach of contract and the Prompt Payment Act, plus interest and penalties. It did not specify that any part of that Judgment related to the contractor's lien. However, if Naylor had complied with the Contractor's Lien Statute, and the contractor's lien not expired, a portion of the judgment could have been enforced pursuant to the contractors' lien law. See Ahokas, 361 B.R. at 64. How, then, does the bankruptcy court assess the state court Judgment, given the expiration of the contractor's lien? The Vermont courts have observed: "[t]he object of the [contractor's lien] statute is security and the effect is a preference not available in an ordinary contractor's action." Reynolds v. Clapper, 132 Vt. 188, 190, 318 A.2d 173, 175 (1974). The Reynolds Court commented that although the creditor in that case had filed an attachment too late to preserve the contractor's lien, the underlying action did not necessarily abate because of that failure to comply with the statutory time-line. The court cited Goodro, 112 Vt. at 217, for this proposition:

> Since the form of an action may be the same regardless of whether it seeks a judgment in personam or in rem (citing cases) what we have said above does not contradict the holding in Piper v. Hoyt, [61 Vt. 539 (1889)]to the effect that a lien claimant who was in privity with the owner of the property . . . and who failed to meet a requirement of the lien law in bringing his action might obtain a personal judgment therein, but the action would be ineffective for enforcing the lien.

Reynolds, 132 Vt. at 190-91, 318 A.2d at 175. In other words, even though a proponent fails to comply with

the requirements of the contractor's lien law in some fashion, rendering the contractor's lien ineffective, the underlying cause(s) of action (in this case, breach of contract and Prompt Payment Act) remain viable. This is so because the contractor's lien is, in essence, "a special statutory right. It is a security interest in the nature of a mortgage, available at law, effecting a preference. It provides for an equity of redemption and operates against the property." Woodbury Lumber v. McIntosh, 125 Vt. 154, 155, 211 A.2d 240, 242 (1965). While the in rem cause of action no longer exists, the in personam cause of action is not affected. Accordingly, Naylor will have an enforceable judgment lien against the Debtors' Property if and when he records his judgment in compliance with 12 V.S.A. § 2904.

If Naylor does record his Superior Court Judgment, the next question is whether it will be subject to avoidance under bankruptcy law. The lien arising from the recording of the Judgment would be a judicial lien, defined in the Code as "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(36). A judicial lien may be avoided in bankruptcy if it impairs a debtor's homestead exemption. See § 522(f)(1). The Bankruptcy Code sets forth the following computation to measure whether, and the extent to which, a lien impairs an exemption:

> (A)    For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –
>
> (i)    the lien;
>
> (ii)   all other liens on the property; and
>
> (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A). As the Second Circuit has observed,

> § 522(f) defines 'impair[ment]' as the amount by which the sum of (a) the lien whose avoidance is sought, (b) all other liens, and (c) the amount of the exemption 'exceeds the value that the debtor's interest in the property would have in the absence of any liens.' § 522 (f)(2)(A). The purpose of allowing avoidance of such liens is to 'protect [ ] the debtor's exemptions, his discharge, and thus his fresh start.' S. Rep. No. 95-989, at 76, reprinted in 1978 U.S.C.C.A.N. at 5862.

In re Scarpino, 113 F.3d 338 (2d Cir, 1997).

In this case, the value of the Property, as provided in Schedule A, is $210,000. The judgment lien (should Naylor record the Superior Court Judgment Order) amounts to $42,594.02 (plus penalties and interest, which were not calculated). All other liens on the property total $186,000 (the Aegis $182,000 lien and the $6,000 VHCB lien). Together, the Debtors could claim a homestead exemption of $75,000 if there were no liens on the property. See 27 V.S.A. § 101. Applying the § 522(f)(2)(A) formula, the sum of Naylor's judgment lien ($42,594.02), the other liens on the Property ($186,000), and the Debtors' maximum homestead

9

exemption ($75,000) is $303,594.02. The value of the Debtors' interest in the Property, as set forth in Schedule A of the Debtors' bankruptcy schedules, is $210,000. Since the sum of the liens and homestead exemption exceeds the property's value by $93,594.02, Naylor's judicial lien impairs the Debtors' homestead exemption. Since Naylor's judgment is for a sum less than the amount of the impairment computed under this formula, Naylor's state court Judgment may be avoided in its entirety. See Corson v. Fidelity & Guaranty Ins. Co. (In re Corson), 206 B.R. 17, 21-22 (Bankr. D. Conn. 1997) (providing steps for calculating whether lien impairs homestead exemption).

**IV.    Naylor Has No Allowed Secured Claim in These Bankruptcy Cases**

As a consequence of the Debtors being able to avoid the judicial lien under § 522(f), the Court need not address if, or the extent to which, the Debtors may bifurcate Naylor's claim under § 506(d). Naylor has no secured claim.

**V.    Naylor's Remaining Arguments**

Naylor makes a variety of unsupported legal assertions (in the "Facts" section of his Memorandum), including assertions that the validity of his lien has already been determined in this Court by virtue of the Debtors' withdrawal of their original motion to avoid lien (doc. # 25, ¶ 7), and that "Debtor is prohibited by law from filing, then withdrawing, her motion to avoid Naylor's lien and then renewing that motion only after Naylor has successfully defended her appeal in state court at great cost to Naylor in specific reliance on this Court's [relief from stay] Order authorizing him to do so" (id., ¶ 10). He cites no case law to support the proposition that the withdrawal of a motion is an admission that the motion is without merit, or that the failure to litigate a motion on its merits precludes a party from raising the question at a later date. The Court has considered these "arguments" and finds them to be unsubstantiated by case law, inapposite to the legal issue presented, and without merit.  It has considered all other arguments asserted by Naylor , as well, and finds them to be unavailing.

CONCLUSION

The Court finds that Naylor's failure to record a certified copy of his February 2006 Chittenden Superior Court Judgment within five months of obtaining that judgment, as required by 9 V.S.A. § 1925, caused his contractor's lien to expire. Nevertheless, Naylor has a valid judgment based upon his breach of contract and Prompt Payment Act causes of action. Should he record his Judgment, it would constitute a judicial lien which is avoidable in toto under §522(f) as impairing the Debtors' homestead exemption. Consequently, the Court finds that Naylor has no allowed secured claim in these two bankruptcy cases, but rather is limited to holding a general unsecured claim. Based upon these findings, the Court grants the Debtors' motion to avoid Naylor's lien under § 522(f) and overrules Naylor's objection to that motion in all

respects.

      This constitutes the Court's findings of fact and conclusions of law.


July 21, 2008                                                            Colleen A. Brown
Rutland, Vermont                                                 United States Bankruptcy Judge

---

[1] The parties alternately refer to the subject lien as a contractor's lien and as a mechanic's lien. Although such liens are colloquially referred to as mechanic's liens, the pertinent Vermont statute designates these liens as contractor's liens. Accordingly, the Court will refer to Naylor's lien as a contractor's lien.

[2] These two chapter 7 cases were filed as a single case and then severed by order dated May 9, 2006. The cases are being jointly administered for purposes of this motion since this dispute focuses on a single contract signed by both Debtors, a lien against a single parcel of property that is owned jointly by the two Debtors, and a state court action against both Debtors that arises from a single transaction relating to that contract and parcel of property.

[3] All statutory citations refer to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

[4] For ease of reference, the Court will cite the document numbers from the Ducharme case, since the document numbers in the Cusson case do not correspond to those in Ducharme, and citing two numbers for each document could be confusing.

[5] Naylor's Statement of Undisputed Facts, however, contains a great deal of argument as well as irrelevant detail. See doc. # 38.

[6] Although not pertinent to the instant dispute, Naylor also filed motions to dismiss the chapter 7 cases (doc. # 34) and motions for a stay pending appeal (doc. # 35) with respect to this Court's order granting the motions to reopen. The Debtors opposed both motions (doc. ## 49, 50) and the Court denied the motions (doc. ## 53, 57).Naylor has appealed the orders granting the motions to reopen (doc. # 29), and the appeals are currently pending before the U.S. District Court for the District of Vermont.

[7] 9 V.S.A. § 1921, entitled "Extent of lien; notice" provides as follows:

    (a) When a contract or agreement is made, whether in writing or not, for erecting, repairing, moving or altering improvements to real property or for furnishing labor or material therefor, the person proceeding in pursuance of such contract or agreement shall have a lien upon such improvements and the lot of land on which the same stand to secure the payment of the same.

    (b) A person who by virtue of a contract or agreement, either in writing or parol, with an agent, contractor, or subcontractor of the owner thereof, performs labor or furnishes materials for erecting, repairing, moving, or altering such improvements shall have a lien, to secure the payment of the same upon such improvements and the lot of land upon which the same stand, by giving notice in writing to such owner or his or her agent having charge of such property that he or she shall claim a lien for labor or material. The notice shall include the date that payment is due, if known. Such lien shall extend to the portions of the contract price remaining unpaid at the time such notice is received.

    (c) A lien herein provided for shall not continue in force for more than 180 days from the time when payment became due for the last of such labor performed or materials furnished unless a notice of such lien is filed in the office of the town clerk as hereinafter provided.

    (d) A lien under this section shall not take precedence over a deed or other conveyance to the extent that consideration therefor has been paid in good faith before record of such lien. Such lien shall not take precedence over a mortgage given by the owner thereof upon such building, property or improvements and the lot of land

11

on which the same stand, as security for the payment of money loaned and to be used by such owner in payment of the expenses of the same, if such mortgage is recorded before such lien is filed in the office of the town clerk as hereinafter provided. If such mortgagee shall receive written notice that any lien hereunder is to be claimed, such lien shall take precedence over such mortgage as to all advances thereafter made under such mortgage to such mortgagor, except such advances as the mortgagee may show were actually expended in completing such improvements to real property.

(e) The lot of land covered by such lien shall be deemed to be all of the land owned or held by the owner and used or designed for use in connection with such improvements, but such lien shall not extend to other adjacent lands used for purposes of profit.

(f) A lien under this section may not be waived in advance of the time such labor is performed or materials are furnished, and any provision calling for such advance waiver shall not be enforceable.

9 V.S.A. § 1921 (2008).

[8] 9 V.S.A. § 1923, entitled "Recording notice of lien," specifies how to perfect a contractor's lien:

A person claiming a lien under section 1921 of this title shall file for record in the clerk's office of the town where such real estate is situated, a written memorandum, signed by him, asserting his claim, which shall charge such real estate with such lien as of the visible commencement of work or delivery of material to the extent and subject to the exceptions provided in sections 1921 and 1922 of this title. Several such liens, asserted as aforesaid, shall be paid pro rata, if the sum due or to become due from the owner thereof is not sufficient to pay the same in full.

9 V.S.A. § 1923 (2008).

[9] 9 V.S.A. § 1924, entitled "Action to enforce lien," sets out the requirements for enforcing a perfected lien:

Within 180 days from the time of filing such memorandum, if such payment is due at the time of such filing and within 180 days from the time such payment becomes due, if not due at the time of such filing, such person may commence his or her action for the same and cause such real estate or other property to be attached thereon. If he or she obtains judgment in the action, the record of such judgment shall contain a brief statement of the contract upon which the same is founded.

9 V.S.A. § 1924 (2008).

[10] Vermont Rule of Civil Procedure 4.1(b), entitled "Writ of Attachment: Issuance," sets out the procedure for obtaining a writ of attachment:

(1)  A writ of attachment shall be filled out as provided in subdivision (c) of this rule and issued to the plaintiff's attorney by the clerk of the court in the county where the action is pending or the property is located. Such writ shall issue only upon the order of a Superior or District Judge approving attachment for a specified amount as provided in paragraph (2) or (3) of this subdivision. The order shall specifically state the grounds of its issuance and shall be incorporated in and made part of the writ.

(2)  Except as provided in paragraphs (3) and (4) of this subdivision, an order of approval may be issued only upon motion after five days' notice to the defendant, or on such shorter notice as the judge may prescribe for good cause shown, and upon hearing and a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the defendant to be available to satisfy the judgment. The motion shall be filed with the complaint and shall be supported by an affidavit or affidavits meeting the requirements set forth in subdivision (i) of this rule. The motion and affidavit or affidavits, together with the notice of hearing thereon, shall be served upon the defendant in the manner provided in Rule 4 at the same time that the summons and complaint are served upon the defendant.

V.R.Civ. P. 4.1(b) (2008).

[11]  9 V.S.A. § 1925, entitled "Foreclosure," provides:

Within five months after the date of such judgment, the plaintiff may cause a certified copy of the record thereof to be recorded in the office of the clerk of the town in which such real estate or other property is situated. Thereupon the same shall be holden for the amount due upon such judgment, with the costs of such copy and recording the same, as if it had been mortgaged for the payment thereof, from the time of the visible commencement of work or delivery of materials, subject, however, to the priorities provided in section 1921 of this title, and the plaintiff may obtain possession and foreclose the defendant's equity of redemption as in case of a mortgage.

9 V.S.A. §1925 (2008).

[12]   Naylor's opposition papers focus primarily on what he alleges to be the Debtors' and their attorney's improper conduct and the exorbitant costs he has incurred in pursuing his remedies, including two "involuntary trips to Bankruptcy Court" in connection with the Debtors' request for the relief sought in their Motion (doc. # 25, ¶ 1). What is disturbing to the Court, however, is Naylor's and his attorney's unconstrained animosity towards the Debtors and their attorney, as reflected in his papers. For example: (1) he accuses the Debtors' attorney of "acting in collusion with the attorney for the title carrier" who issued an opinion letter in connection with the Debtors' granting of a mortgage to Aegis Lending (id. ¶ 3); (2) he describes the Debtors and their attorney as being "engaged in a patent abuse of the law by bringing yet another frivolous pleading, a pleading that is clearly impermissible under the law"; and (3) he claims that he "should receive an award for the attorney's fees incurred by him in opposing yet one more frivolous pleading by this debtor and her various attorneys. These frivolous pleadings have been filed by the debtor and her attorneys unremittingly through the proceedings in three different courts . . . ." (id. ¶ 5). The Court takes this opportunity to caution Naylor and his attorney against making improper and unsupported personal attacks against the Debtors and Debtors' attorney in their papers before this Court.

[13]   Although Naylor did not raise the argument, the Court points out that there were seven weeks between issuance of the Superior Court Judgment and the Debtors' filing of their bankruptcy petition, and that there was a five week period after relief from stay was granted and the end of the five month period allowed by § 1925, during which he could have recorded the Judgment.

[14]   Section 2904, entitled "Recording," provides:

A judgment creditor may record a judgment lien at any time within eight years from the date the judgment becomes final in the town clerk's office of any town where real property of the debtor is located. Recording shall consist of filing a copy of the judgment with date when it became final, certified by the clerk of the court issuing the judgment. The certification shall be recorded by the town clerk in the land records.

12 V.S.A § 2904 (2008).